**Not for Publication**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **BETH SHAPIRO, *et al.*,** |  |
| **Plaintiffs,** | **Civil Action No.: 22-cv-1958 (ES) (AME)** |
| **v.** | **OPINION** |
| **AETNA, INC. and AETNA LIFE INSURANCE COMPANY,** |  |
| **Defendants.** |  |

**SALAS, DISTRICT JUDGE**

Plaintiffs Beth Shapiro, Lori Lombardi, and Heather Gitlin (together, "Plaintiffs") initiated this putative class action against defendants Aetna, Inc. and Aetna Life Insurance Company (together, "Defendants") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, *et seq.*, for Defendants' alleged underpayment of benefits under Plaintiffs' ERISA health care plans. (D.E. No. 1 ("Complaint" or "Compl.")). Before the Court is Defendants' joint motion to dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (D.E. No. 14). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' motion is **GRANTED-in-part** and **DENIED-in-part.**

## I.       BACKGROUND

### A.       Factual Background

Plaintiffs are three individuals who received health benefits through ERISA plans (the "Plans") which were self-funded by their employers, administered by Aetna, and which participated in Aetna's National Advantage Program ("NAP") during the relevant time periods. (Compl. ¶¶ 38, 41, 43 & 45). Defendant Aetna, Inc. is a health insurance company that is alleged to "[e]ither directly or through its wholly [] owned and controlled subsidiaries . . . issue[] and administer[] health insurance plans." (*Id*. ¶ 47). According to the Complaint, "Aetna, Inc. is a fiduciary under ERISA regarding the claims at issue in this litigation." (*Id*.). Defendant Aetna Life Insurance Company is a wholly owned and controlled subsidiary of Aetna, Inc. (*Id*. ¶ 48). Aetna Life Insurance Company is the third-party administrator to the Plans. (D.E. No. 14-3 at 7; D.E. No. 14-4 at 2; D.E. No. 14-5 at 2).[1] According to the Complaint, "Aetna Life Insurance Company, acting directly and on behalf of and under the supervision and direction of Aetna, Inc., is also a fiduciary under ERISA regarding the claims at issue in this litigation." (Compl. ¶ 48).

While covered by the Plans, Plaintiffs each underwent a medical procedure which was performed by an out-of-network provider at an in-network facility. Specifically, Plaintiffs underwent breast reconstruction surgeries as a part of their treatment for breast cancer. (*Id*. ¶¶ 61, 90–91 & 105–06). According to the Complaint, these procedures constituted "Involuntary Services" under the terms of the Plans and Plaintiffs' benefits claims should have been, but were not, processed accordingly. (*Id*. ¶¶ 55, 86 & 107).

---

[1]       Citations to Docket Entry numbers 14-3, 14-4, and 14-5 refer to the pagination automatically generated by the Court's electronic filing system.

The Plans provide that "Involuntary services are services or supplies that are one of the following . . . Performed at a network facility by an out-of-network provider, unless that out-of-network provider is an assistant surgeon for your surgery." (D.E. No. 14-3 at 109; D.E. No. 14-4 at 90; D.E. No. 14-5 at 63). The Plans further provide that "[w]e will calculate your cost share for involuntary services in the same way as we would if you received services from a network provider." (D.E. No. 14-3 at 109; D.E. No. 14-4 at 90–91; D.E. No. 14-5 at 63). Because the Plans participated in the NAP, this would include negotiating an ad hoc rate with providers for repayment and precluding the providers from balance billing Plan members. According to the Complaint, generally, when benefits claims under the Plans were processed pursuant to the NAP, "[i]n exchange for reducing payments made to their self-insured employer clients through" these negotiated ad hoc rates and for protecting members from balance billing, Defendants were "paid a 'shared savings fee' . . . often referred to as the 'NAP Access Fee'" by their employer clients. (Compl. ¶ 18). For "Involuntary Services provided by [out-of-network] providers" the NAP Access Fee was allegedly "the difference between what [Aetna] pays to the [out-of-network] provider and the [out-of-network] provider's billed charges." (*Id*. ¶ 37).

Plaintiffs allege that, because their claims for benefits for their breast reconstruction procedures constituted claims for "Involuntary Services," the claims should have been processed as if Plaintiffs received the services from in-network providers. And because the Plans participated in the NAP, Plaintiffs allege that their benefits claims should have been processed consistent with the NAP. Accordingly, Plaintiffs allege that for their benefits claims, Defendants should have either (i) paid the providers' full charged amounts, less only Plaintiffs' in-network cost-sharing obligation or (ii) negotiated an ad hoc rate with the providers and protected Plaintiffs from balance billing. (*Id*. ¶¶ 82, 102 & 132). Instead, according to the Complaint, Aetna "routinely pays these

claims—including claims submitted on behalf of the Plaintiffs here—using the Recognized Charge, a Medicare-based rate, or some other artificially low [out-of-network rate] calculated by Data iSight, a service of MultiPlan." (*Id.* ¶ 30). These rates are allegedly lower than the provider's full charged amount or the rate that could have been negotiated ad hoc, and by using these rates Defendants subjected their members to balance billing. (*Id.*). In so doing, Plaintiffs allege that Defendants "consistently and routinely underpaid claims for Involuntary Services at [out-of-network rates] that were not Ad-Hoc Rates (or billed charges) . . . all to increase the NAP Access Fees [they] charged [their] employer clients." (*Id.* ¶ 38). As such, Plaintiffs allege that Defendants "violated ERISA by failing to pay claims in adherence with the terms and conditions of" the Plans and "breached [their] fiduciary duties, including [their] duty of loyalty and ERISA's prohibition against self-dealing." (*Id.* ¶¶ 39–40).[2]

### B.    Procedural History

Plaintiffs initiated this putative class action on April 5, 2022, bringing three counts for claims under ERISA: (i) Count I contains claims for benefits and for breach of fiduciary duties pursuant to § 502(a)(1)(B); (ii) Count II contains claims pled in the alternative for breach of fiduciary duties pursuant to § 502(a)(3)(A); and (iii) Count III contains claims pled in the alternative for Defendants' alleged unjust enrichment from charging their self-funded employer clients NAP Access Fees pursuant to § 502(a)(3)(B). (Compl. ¶¶ 144–54). Plaintiffs purport to represent a putative class of individuals defined as

> [a]ll persons in the United States who were covered under a self-funded ERISA health benefit plan administered by Aetna that participates in the National Advantage Program ("NAP"), and who submitted a benefit claim, or had a benefit claim submitted on their behalf, for Involuntary Services, as that term is defined in Aetna's NAP plans, which was adjudicated by Aetna at any time within the applicable statute of limitations and for which

---

[2]    Plaintiffs allege that they have fully exhausted their administrative remedies by appealing these benefits determinations through multiple rounds of review. (*Id.* ¶¶ 68–81, 93–101 & 109–31).

the allowed amount as determined by Aetna was lower than the provider's
billed charge and not the result of a bona fide negotiations of an ad-hoc-rate
for that particular claim for benefits.

(*Id.* ¶ 136).  On October 21, 2022, the parties filed the full briefing on the instant motion to dismiss.

(D.E. No. 14-1 ("Mov. Br."); D.E. No. 15 ("Opp. Br."); D.E. No. 16 ("Reply")).  Defendants move

to dismiss the Complaint in its entirety on the bases that (i) Plaintiffs' services did not constitute

"Involuntary Services" under their Plans, (ii) Plaintiffs cannot state a claim for equitable relief

pursuant to § 502(a)(3), and (iii) the Complaint fails to adequately distinguish between Defendants.

(*See generally* Mov. Br.).

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed, in whole or in part, for failure to state

a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Id.*  On a 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and

draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v.

Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  However, "threadbare recitals

of the elements of a cause of action, legal conclusions, and conclusory statements" are all

disregarded.  *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir.

2012)).  The burden is on the moving party to show that the plaintiff has not stated a facially

plausible claim.  *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

A complaint must also meet the pleading requirements of Rule 8.  Rule 8 requires that a

complaint set forth the plaintiff's claims with enough specificity to "give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal

quotation marks and citations omitted).  Thus, the complaint must contain "sufficient facts to put

the proper defendants on notice so they can frame an answer" to the plaintiff's allegations.  *See*

*Dist. Council 47 v. Bradley et. al.*, 795 F.2d 310, 315 (3d Cir. 1986).  As part of this notice

pleading, a complaint must plead enough facts to "raise a reasonable expectation that discovery

will reveal evidence of the necessary element." *Twombly*, 550 U.S. at 556.  Where information is

in the exclusive control of the defendants, courts in this district have applied a relaxed pleading

standard.  *See In re Volkswagen Timing Chain Product Liab. Litig.*, No. 16-2765, 2017 WL

1902160, at *9 (D.N.J. May 8, 2017) ("Plaintiffs cannot be expected to know the exact corporate

structure and degree of each Defendant's involvement, at this stage in the litigation and prior to

discovery.") (citing *Weske v. Samsug Elecs. Am., Inc.*, 934 F.Supp.2d 698, 708 (D.N.J. 2013)).

In evaluating a plaintiff's claims, the Court considers the allegations in the complaint, as

well as the documents attached thereto and specifically relied upon or incorporated therein.  *See*

*Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington*

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or

explicitly relied upon in the complaint may be considered without converting the motion [to

dismiss] into one for summary judgment.") (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194,

1220 (1st Cir. 1996)) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Count I—Claims under Section 502(a)(1)

#### 1.   Claims for Benefits

Section 502(a)(1) provides that a "participant or beneficiary" of an ERISA plan may bring

a civil action "to recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights

under the terms of the plan, or to clarify h[er] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).   To state a claim for relief under § 502(a)(1)(B), a plaintiff "must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006).   In order to plead sufficient facts to state a claim for relief, the plaintiff must identify a specific provision of the plan for which a court can infer this legally enforceable right.   *See, e.g.*, *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018).

Defendants argue that Plaintiffs have failed to state a claim for benefits under § 502(a)(1) because they have "not plausibly alleged an entitlement to 'involuntary services' benefits under their plans." (Mov. Br. at 13).   Specifically, Defendants argue that "Plaintiffs' contention that Aetna is obligated to reimburse services performed by Plaintiffs' hand-picked medical providers as though Plaintiffs had no choice of provider is precluded by the very plan language Plaintiffs invoke." (*Id.*).   In opposition, Plaintiffs argue that the plain language of their Plans makes clear that the services they received—provided by out-of-network providers at in-network facilities— constituted "Involuntary Services" and should have been processed as such.   (Opp. Br. at 5–14). Plaintiffs further argue that they have made sufficient allegations to state a claim for relief under § 502(a)(1) pursuant to precedent in this district.   (*Id.* at 14–18).

The Court first notes that the parties argue extensively over whose interpretation of the "Involuntary Services" provision of the Plans is correct, including by discussing at length the principles for interpreting the terms of an ERISA plan.   (Mov. Br. at 13–17; Opp. Br. at 5–14; Reply at 4–7).   However, the Court finds that it is inappropriate for it to engage in such an analysis

at this stage of the litigation.[3]   Rather, on a motion to dismiss, the Court looks only to whether Plaintiffs have plausibly alleged a claim for relief.  *See Funicelli v. Sun Life Fin. (US) Serv. Co., Inc.*, No. 12-6659, 2014 WL 197911 at *3 n.2 (D.N.J. Jan. 14, 2014) (declining to reach the issue of whether the administrator's decision was arbitrary and capricious at motion to dismiss stage and instead only analyzing whether plaintiff had stated a claim); *Bergamatto v. Board of Tr. of NYSA-IL A Pension Tr. Fund*, No. 16-5484, 2017 WL 4155225, at *6 (D.N.J. Sept. 18, 2017) (same) (citing *Funicelli*, 2014 WL 197911, at *3 n.2).[4]

Here, each Plaintiff has alleged that she is a participant in an ERISA plan.  Each has identified a particular provision in her Plan—the "Involuntary Services" provision—which she alleges entitles her to benefits (*id*. ¶¶ 55, 86 & 107), and which she alleges Defendants improperly applied to her claim(s) for services rendered by an out-of-network provider at an in-network facility, resulting in their underpayment of benefits (*id*. ¶¶ 82–83, 102–03 & 132–33).

---

[3]     In making these arguments, the parties also fail to discuss or apply the appropriate standard of review for an ERISA benefits determination.  Namely, an ERISA benefits determination is reviewed under the de novo standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where the administrator is vested with discretionary authority, this Court applies a "deferential standard of review." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).  And where the terms of an ERISA plan are disputed, the standard of review is further refined based upon whether or not the disputed term is ambiguous.  If the court finds that the term is ambiguous, the court analyzes whether the plan administrator's interpretation is reasonable.  *Bauer ex rel. the Craig E. Bauer Ins. Trust Dated Dec. 29, 2003 v. Reliance Standard Life Ins. Co.*, 421 F. App'x 226, 227 (3d Cir. 2011).  The Third Circuit has laid out five factors to consider in determining reasonableness.  *Id*. (quoting *Moench v. Robertson*, 62 F.3d 533, 566 (3d Cir. 1995)).  "If the terms are unambiguous, then any actions taken by the plan administrator inconsistent with the terms of the document are arbitrary.  But actions reasonably consistent with unambiguous plan language are not arbitrary." *Bill Gray Enters., Inc. Employee Health and Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001).  Nonetheless, the Court finds that it need not engage in this analysis at this stage of the litigation, particularly considering that the parties did not provide arguments within this framework.

[4]     Most of the cases cited by the parties regarding interpretation of the terms of an ERISA plan are on a procedural posture requiring analysis of the claims themselves, such as on a motion for summary judgment or for a preliminary injunction.  *See e.g.*, *In re Unisys Corp. Retiree Medical Ben. ERISA Litig.*, 58 F.3d 896 (3d Cir. 1995) (appeal of summary judgment); *McLain v. Metro. Life Ins. Co.*, 820 F. Supp. 169 (D.N.J. 1993) (summary judgment); *Bergamatto v. Board of Trs. of the NYSA-ILA Pension Fund*, 933 F.3d 257 (3d Cir. 2019) (appeal of summary judgment); *Engelhart v. Conrail*, No. 9207056, 1996 U.S. Dist. LEXIS 13610, at *18 (E.D. Pa. Sept. 16, 1996) (summary judgment); *Anonymous Oxford Health Plan Member with ID No. 95278903 v. Oxford Health Ins., Inc.*, No. 12-2367, 2012 WL 2087425, at *2 (D.N.J. June 8, 2012) (preliminary injunction).

Additionally, each Plaintiff has alleged that the services rendered were medically necessary and appropriate, and that she has exhausted her administrative remedies. (*Id.* ¶¶ 81, 101 & 131).

The Court agrees with Plaintiffs that they have sufficiently stated a claim for relief under § 502(a)(1). (*See* Opp. Br. at 14–18). Plaintiffs direct the Court to *Robinson v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-4600, 2018 WL 6258881, at *1 (D.N.J. Nov. 30, 2018). (Opp. Br. at 14–16). In that case, Judge Wolfson found that, to sufficiently state a claim for relief under § 502(a)(1), the plaintiff had to allege "facts referencing particular provisions in the Plan obligating Defendants to pay certain benefits in connection with out-of-network Emergency services" as well as "that he is entitled to additional benefits pursuant to the Plan provisions by which out-of-network rates are determined," such as by alleging, "at a minimum, that defendants acted in contravention of the procedures for determining out-of-network benefits." *Robinson*, 2018 WL 6258881, at *4.[5] This is consistent with what courts in this district, including this Court, have required to state a claim under § 502(a)(1). *See e.g.*, *Emami v. Cmty. Ins. Co.*, No. 19-21061, 2021 WL 4150254, at *5 (D.N.J. Sept. 13, 2021); *Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*, No. 17-13596, 2018 WL 4144684, at *3 (D.N.J. Aug. 29, 2018) (collecting cases).

Therefore, the Court finds that Plaintiffs have sufficiently stated a claim for relief under § 502(a)(1)(B) to survive Defendants' motion to dismiss. Accordingly, Defendants' motion is DENIED as to Plaintiffs' § 502(a)(1)(B) claims for benefits in Count I, and those claims may proceed at this time.

---

[5]     The Court is not convinced by Defendants attempt to distinguish this case. Defendants essentially argue that *Robinson* is factually distinct, and in fact supports their position, because it "illustrates that plans may include provisions for special reimbursement rates when the member cannot avoid obtaining out-of-network care." (Reply at 5). Here, Defendants argue that the Plans also have special provisions to protect members when they cannot avoid obtaining out-of-network care—namely the Involuntary Services provision—but that those provisions do not apply to Plaintiffs' claims. (*Id.*). But whether ERISA plans may create provisions to cover circumstances where receiving out-of-network care is outside the control of the member is irrelevant to the present inquiry. As Plaintiffs argue, *Robinson* lays out which factual allegations would be sufficient to state a claim for relief under § 502(a)(1), and Plaintiffs have alleged facts which the district court in *Robinson* indicated would be sufficient. (Opp. Br. at 14–16).

### 2.      Claims for Fiduciary Breach

In addition to their claims for benefits, Plaintiffs assert claims for Defendants' alleged breach of fiduciary duties pursuant to § 502(a)(1)(B) in Count I.  (Compl. ¶ 147 ("Aetna also violated its ERISA fiduciary duties, including its duty of loyalty . . . and the duty to act in accordance with the written terms of its ERISA plans.")).  Defendants argue that "Plaintiffs' 'fiduciary breach' claim is subsumed in their claims for benefits" and therefore must rise and fall with Plaintiffs' claims for benefits under § 502(a)(1)(B).  (Mov. Br. at 17 n.7).  Plaintiffs do not address this argument as it pertains to their claims for fiduciary breach under § 502(a)(1)(B).  (*See generally* Opp. Br.).  The Third Circuit has explained that "§ 502(a)(1)(B) does not create a private cause of action for breach of fiduciary duty."  *Michaels v. Breedlove*, No. 03-4891, 2004 WL 2809996, at *2 (3d Cir. Dec. 8, 2004) (citing *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1501 (3d Cir. 1994)).  Accordingly, to the extent Plaintiffs bring claims for Defendants' alleged breach of their fiduciary duties under § 502(a)(1)(B), those claims are DISMISSED *with prejudice*.  *See Robinson*, 2018 WL 6258881, at *4 n.4.

### B.      Count II—Claims under Section 502(a)(3)(A)

In Count II, Plaintiffs bring claims for equitable relief under § 502(a)(3)(A), alleging that Defendants violated their fiduciary duties by "systematically violat[ing] ERISA and the terms of the Class members' ERISA plans."  (Compl. ¶ 150).  Plaintiffs' claims in Count II are brought in the alternative, and "only to the extent that the Court finds that the injunctive relief sought is unavailable pursuant to [§ 502(a)(1)(B)]."  (*Id*. ¶ 149).

Defendants move to dismiss Plaintiffs' § 502(a)(3)(A) claims on two bases: (i) that relief under § 502(a)(3) is unavailable if Plaintiffs have an adequate remedy under § 502(a)(1) and (ii) that the relief sought by Plaintiffs is not equitable in nature.  (Mov. Br. at 17–20).  Plaintiffs oppose,

arguing that (i) though they cannot recover under both §§ 502(a)(1) and 502(a)(3), they are entitled to plead both claims in the alternative and (ii) a declaration that Defendants violated their legal obligations and an injunction ordering Plaintiffs' benefits claims to be reprocessed is an appropriate form of equitable relief, especially in an ERISA class action.  (Opp. Br. at 18–33).[6] For the following reasons, the Court agrees with Plaintiffs.

To start, following the Supreme Court's ruling in *Varity Corp. v. Howe*, Plaintiffs cannot recover under both §§ 502(a)(1) and 502(a)(3).  516 U.S. 489, 512 (1996) (explaining that § 502(a)(3) is one of two "'catchall' provisions" which "act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy"); *Freitas v. Geisinger Health Plan*, 542 F.Supp.3d 283, 310–311 (M.D. Pa. 2021) ("Courts interpreting *Varity* all agree that a beneficiary may not ultimately *recover* under both § 502(a)(1) and § 502(a)(3).") (emphasis in original).  However, there is a Circuit split regarding whether plaintiffs are precluded from *pleading* claims under both §§ 502(a)(1) and 502(a)(3) in the alternative.  *Freitas*, 542 F.Supp. at 311 n.142 (explaining that the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits all appear to preclude alternatively pleading claims under §§ 502(a)(1) and 502(a)(3), but the Second Circuit has allowed it).  The Third Circuit has not ruled on the issue, and courts in this district are split.  *Id*.

The Third Circuit has noted that "a court must apply ERISA § 502(a)(3)(B) cautiously when an individual plan beneficiary seeks 'appropriate equitable relief.'"  *Ream v. Frey*, 107 F.3d 147, 152–53 (3d Cir. 1997).  Some courts in this district have found that *Varity* and *Ream* caution

---

[6]      In their reply brief, Defendants additionally argue that the Court need not decide whether §§ 502(a)(1) and 502(a)(3) claims may be plead in the alternative, because Plaintiffs have failed to state a claim under § 502(a)(3) for disgorgement of the NAP Access Fees.  (Reply at 9–10).  However, the Complaint alleges claims under § 502(a)(3) in both Counts II and III, and only Count III addresses the NAP Access Fees.  (Compl. at 35–37).  Accordingly, the Court must still address whether Plaintiffs may plead a claim under § 502(a)(3) in the alternative in Count II.

against applying §§ 502(a)(1) and 502(a)(3) in a way that allows for double recovery, but that it is nonetheless premature to dismiss § 502(a)(3) claims alleged in the alternative on a motion to dismiss, before it is clear whether the plaintiff may attain adequate relief under § 502(a)(1).  *See, e.g.*, *Unv. Spine Cntr. v. Horizon Blue Cross Blue Shield of New Jersey*, No. 16-9253, 2017 WL 3610486, at *4 (D.N.J. Aug. 22, 2017) ("Courts in this district and elsewhere have held that because a plaintiff may plead in the alternative, dismissal of a breach of fiduciary duty claim as duplicative of a benefits claim is generally not appropriate on a motion to dismiss."); *Lipstein v. United Healthcare Ins. Co.*, No. 11-1185, 2011 WL 5881925, at *3 (D.N.J. Nov. 22, 2011) ("The Court is persuaded by the reasoning of those courts that have found that *Varity* does not establish a bright line rule precluding the assertion of alternative claims under §§ 502(a)(1)(B) and 502(a)(3) at the motion to dismiss stage."); *Shah v. Aetna*, No. 17-195, 2017 WL 2918943, at *2 (D.N.J. July 6, 2017) (collecting cases); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-7759, 2018 WL 4089063, at *2 (D.N.J. Aug. 27, 2018).

Other courts have found that—in light of both *Varity* and *Ream*—§ 502(a)(3) claims alleged in the alternative to § 502(a)(1) claims should be dismissed, particularly where such claims are duplicative.  *See, e.g.*, *Plastic Surgery Ctr. P.A. v. Cigna Health and Life Insurance Co.*, No. 17-2055, 2018 WL 2441768, at *13–14 (D.N.J. May 31, 2018) (explaining the inter and intra Circuit split and finding that dismissal was warranted where the plaintiff's claims under § 502(a)(3) were "wholly duplicative" of its claims under § 502(a)(1)); *In re Aetna UCR Litig.*, No. 07-3541, 2015 WL 3970168, at *16 (D.N.J. June 30, 2015) (finding that "Plaintiffs' claim for breach of fiduciary duties is revealed as duplicative of their claim for benefits under Section 502(a)(1)(B) because they cannot identify with any degree of specificity what equitable relief they want," and duplicative claims must be dismissed); *Change v. Life Ins. Co. of N. Am.*, No. 09-0019,

2008 WL 2478379, at *4 (D.N.J. June 17, 2008) ("The Court agrees that *Varity* should not be read as imposing a bright-line prohibition on Section 502(a)(3) claims when Section 501(a)(1)(B) are also set forth.  But Plaintiff's Count II appears to be nothing more than an attempt to couch the request for relief it had previously set forth in Count I in the language of equity.").

As the undersigned has previously explained, "[t]he Court agrees with Plaintiff[s], and with other courts in this District, that dismissal of an ERISA-breach-of-fiduciary-duty claim on this basis is not appropriate at this early procedural stage."  *Univ. Spine Ctr.*, 2018 WL 4089063, at *2; *see also Martin v. Prudential Ins. Co. of Am.*, No. 12-6208, 2013 WL 3354431, at *9 n.5 (D.N.J. July 2, 2013).  However, "Defendants may renew this challenge to the redundancy of Plaintiff[s'] claims on summary judgment, and at that time it will be Plaintiff[s'] burden to distinguish" their claims under §§ 502(a)(1) and 502(a)(3).  *Univ. Spine Ctr.*, 2018 WL 4089063, at *2.

To the extent Defendants additionally argue that the relief sought by Plaintiffs under § 502(a)(3) is not equitable in nature, the Court disagrees.  Defendants interpret the Complaint as seeking the payment of additional benefits under § 502(a)(3) in Count II, which they allege is improper.  (Mov. Br. at 18–19).  The Complaint itself does not clearly allege which form of relief is sought pursuant to which Count.  In its prayer for relief, the Complaint broadly asks the Court to (i) certify the Class and appoint Plaintiffs as Class Representatives; (ii) declare that Defendants violated their legal obligations; (iii) order Defendants to pay Plaintiffs' benefits, "or alternatively, order[] Aetna to reprocess all wrongfully denied claims in compliance with plan terms and without the improper reductions described herein;" (iv) "[a]s an alternative remedy, order[] Aetna to make an equitable payment to Plaintiffs and members of the Class;" (v) award Plaintiffs "disbursements and expenses of this action;" (vi) permanently enjoin Defendants from engaging in the misconduct alleged; and (vii) grant additional relief that is just and proper.  (Compl. at 38).  In their opposition

brief, Plaintiffs argue that in Count II they seek alternative equitable relief under § 502(a)(3) of only "(i) a declaration that Aetna violated its legal obligations by failing [to] adhere to the Involuntary Services provision of its Plans; and (ii) . . . an order requiring Aetna to reprocess all wrongfully paid claims for Involuntary Services provided by [out-of-network] providers coupled with a permanent injunction as part and parcel of that reprocessing order to ensure compliance with plan terms, plus pre- and post-judgment interest." (Opp. Br. at 19–20). This is supported by the specific language in the Complaint that Count II "is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A), *to enjoin Aetna's acts and practices*, as detailed herein. Plaintiff[s] bring[] this claim only to the extent that the Court finds that the *injunctive relief* sought is unavailable pursuant to § 1132(a)(1)(B)." (*Id*. ¶ 149 (emphasis added)).

A reprocessing order is an appropriate form of equitable relief for ERISA actions. *See DeMaria v. Horizon Healthcare Services, Inc.*, No. 11-7298, 2015 WL 3460997, at *5 (D.N.J. June 1, 2015) (certifying the class and finding that a reprocessing order was the only relief available to the class). Defendants do not dispute the appropriateness of an equitable reprocessing order in ERISA actions, but instead argue that Plaintiffs' requested relief under § 502(a)(3) is duplicative of their requested relief under § 502(a)(1) and "is akin to a prayer for money damages." (Mov. Br. at 20). The Court has already found that Plaintiffs may plead a claim under § 502(a)(3) in the alternative at this stage in the litigation. Insofar as Plaintiffs seek only a declaratory judgment, a reprocessing order and permanent injunction under § 502(a)(3) in Count II, these are appropriate forms of equitable relief. Accordingly, Defendants' motion to dismiss Count II is DENIED. Plaintiffs' claims under § 502(a)(3)(A) in Count II may proceed.

### C.       Count III—Claims under Section 502(a)(3)(B)

In Count III, Plaintiffs bring additional claims for equitable relief under § 502(a)(3)(B), alleging that Defendants were "unjustly enriched by charging [their] self-funded clients a NAP Access Fee that is based on a percentage of the amount it underpaid claims to Plaintiffs and members of the Putative Class." (Compl. ¶ 153).  As with their claim under § 502(a)(3)(A) in Count II, Plaintiffs plead a violation of § 502(a)(3)(B) in the alternative.  (*Id*. ¶ 152).

In moving to dismiss this claim, Defendants argue that Plaintiffs have failed to adequately allege that Defendants received a NAP Access Fee in connection with their claims.  (Mov. Br. at 17–21; Reply at 9–10).   Plaintiffs oppose, arguing that they have adequately alleged that Defendants were unjustly enriched in receiving a NAP Access Fee in connection with their claims. (Opp. Br. at 30–36).  Because the Court finds that Plaintiffs have not adequately alleged that Defendants received a NAP Access Fee in connection with their claims, Plaintiffs' § 502(a)(3)(B) claims in Count III are DISMISSED.

The Complaint provides that, for certain plans, "Aetna would also access independent third-party networks through its National Advantage Program ("NAP"), to reimburse [out-of-network] services at amounts lower than the UCR rate." (Compl. ¶ 16).  According to the Complaint, under NAP plans, Defendants reimburse providers who have NAP Contracts at the NAP Contract Rate, and the providers "agree[] not to balance bill the member" in return.  (*Id*. ¶ 17).  When Defendants reimburse a provider through the NAP, they are paid a "shared savings fee . . . referred to as the 'NAP Access Fee'" by the employer.  (*Id*. ¶ 18).

The Complaint alleges that the NAP was expanded to provide reimbursement to providers who do not have NAP Contracts at an "ad hoc" negotiated rate.  (*Id*. ¶ 20).  As part of this

expansion, the NAP program was made to apply to Involuntary Services.   (*Id*. ¶¶ 22–25).

Accordingly, the Complaint alleges that

> [t]o meet its fiduciary obligations to its NAP Plan members receiving
> Involuntary Services from an [out-of-network] provider without a NAP
> Contract vendor agreement, Aetna must, under the clear and unambiguous
> terms of its NAP plans, either (i) pay an [out-of-network] provider's billed
> charges in full, less only the member's in-network cost-sharing obligation;
> or (ii) negotiate an Ad Hoc Rate with the [out-of-network] provider to
> ensure its member is not subject to Balance Billing.

(*Id*. ¶ 29).  The Complaint also provides that

> for Involuntary Services provided by [out-of-network] providers without a
> NAP Contract vendor contract, Aetna's NAP Access Fee is the difference
> between what is paid to that [out-of-network] provider and the [out-of-
> network] provider's billed charges.

(*Id*. ¶ 37).  For each of the named Plaintiffs, the Complaint goes on to allege that her breast

reconstruction procedure, performed by an out-of-network provider at an in-network facility,

constituted an "Involuntary Service" and therefore should have been, *but was not*, reimbursed

according to the above outlined process—either at the full billed amount or at an ad hoc negotiated

rate.  (*Id*. ¶¶ 59, 82, 102, 104, 132 & 134).  And the Complaint alleges that Aetna failed to follow

this procedure in order to increase the NAP Access Fee it received.  (*Id*. ¶ 38).

The Complaint appears to contradict itself regarding the NAP Access Fees.  On the one

hand, the Complaint provides that the NAP Access Fee is charged to the employer when a claim

is reimbursed at a NAP Contract Rate (*id*. ¶¶ 16–18), or, in the absence of a NAP Contract Rate,

at an ad hoc rate negotiated with a non-NAP provider (*id*. ¶ 20).  And the Complaint alleges that

this program applies equally to Involuntary Services.  (*Id*. ¶¶ 22–25).  On the other hand, the

Complaint also alleges that Defendants failed to process Plaintiffs' claims as Involuntary

Services—instead specifically alleging that Defendants did *not* negotiate an ad hoc rate with

Plaintiffs' providers.  (*Id*. ¶¶ 59, 82, 102–103 & 132–133).  The crux of Plaintiffs' allegations is

that Defendants erroneously failed to treat Plaintiffs' benefits claims as "involuntary" in contradiction to the plain language of the Plans. Because the Complaint alleges that Plaintiffs' claims were reimbursed neither at a NAP Contract Rate nor at an ad hoc negotiated rate, it is not clear how a NAP Access Fee would have been charged. In other words, the Complaint provides for only two circumstances under which a NAP Access Fee is charged—(i) when a claim is reimbursed at a NAP Contract Rate or (ii) when a claim is reimbursed at a negotiated ad hoc rate—and also specifically alleges that Plaintiffs' claims were not processed pursuant to either circumstance.[7] Because of this contradiction, Plaintiffs have failed to plausibly allege that Defendants received a NAP Access Fee for Plaintiffs' claims. Accordingly, Plaintiffs' claims in Count III are DISMISSED *without prejudice*.[8]

### D. Proper Defendants

#### 1. Defendant Aetna, Inc.

Plaintiffs bring this action against two Aetna entities—Aetna Life Insurance Company and Aetna, Inc. (*See generally* Compl.). Defendants urge this Court to dismiss Plaintiffs' claims against Aetna, Inc., arguing that it "is a holding company and neither issues insurance policies nor administers plans" and so is an improper defendant to this ERISA action. (Mov. Br. at 22).

---

[7]     The Complaint does not clearly allege any other circumstance in which a NAP Access Fee is charged—for example, it does not allege that a NAP Access Fee is charged when a claim is reimbursed at the standard out-of-network rate, as Plaintiffs' claims appear to have been. The Complaint itself suggests that a NAP Access Fee is *not* charged when a claim is reimbursed at the standard out-of-network rate. This is because, according to the Complaint, the NAP Access Fee is provided to Aetna "[i]n exchange for reducing payments made to their self-insured employer clients through NAP Contract Rates and eliminating any balance bill to the affected member." (*Id.* ¶ 18). It follows that if members are balance billed and payments are not reduced, no NAP Access Fee would attach.

[8]     Defendants additionally argue on Count III that claims under § 502(a)(3) that are duplicative of claims under § 502(a)(1) cannot be maintained and that Plaintiffs are improperly characterizing their claim for monetary relief as a claim for equitable relief. (Mov. Br. at 17–21; Reply at 9–10). The Court has already found that §§ 502(a)(1) and 502(a)(3) claims can be alleged in the alternative at this stage in the litigation. *See supra* at 12–13. Because the Court dismisses Count III for failure to state a claim, the Court will not consider Defendants' argument that the equitable relief Plaintiffs seek for this claim is improper.

Plaintiffs oppose, arguing that "[d]iscovery will bear out what functions, if any, each Defendant performed in furtherance of not only adjudicating the individual claims of the named Plaintiffs, but also formulating and effectuating the policy measures that Plaintiffs plausibly allege gave rise to those adjudications." (Opp. Br. at 4). For the following reasons, the Court declines to dismiss Aetna, Inc. as a defendant at this time.

The proper defendant in a claim for denial of benefits pursuant to § 502(a)(1)(B) is "the plan itself or a person who controls the administration of benefits under the plan." *Evans v. Emp. Benefit Plan, Camp Dresser & McKee, Inc.*, 311 F.App'x 556, 558 (3d Cir. 2009) (citing 29 U.S.C. § 1132(a)(1)(B)). "Exercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B)." *Id.*; *Atlantic Orthopaedic Assoc., LLC v. Blue Cross and Blue Shield of TX and ExpressJet Airlines*, No. 15-1854, 2016 WL 889562, at *6 (D.N.J. Mar. 7, 2016) ("The key is the exercise of discretion."). For a claim pursuant to § 502(a)(3), a plan fiduciary is a proper defendant. *Tamburrino v. UnitedHealth Group Inc., et al*, No. 21-12766, 2022 WL 1213467, at *6 (D.N.J. Apr. 25, 2022).

A parent company is not liable for the alleged fiduciary breaches of its subsidiary. *See Lutz Surgical Partners PLLC v. Aetna, Inc.*, No. 15-2595, 2021 WL 2549343, at *3 (D.N.J. June 21, 2021), *vacated by stipulation*, 2023 WL 2472403, at *1 (D.N.J. Feb. 8, 2023). And it is insufficient to allege merely that corporations are affiliates to hold them liable for another's breach. *See Tamburrino*, 2022 WL 1213467, at *6 (explaining that the allegations that the defendants "'played a role' in the creation and implementation of the co-surgeon reimbursement policy [were] insufficient to plead ERISA claims against them under §§ 1132(a)(1)(B) and 1132(a)(3)" in the absence of allegations that the defendants were plan administrators or fiduciaries).

Here, the Complaint alleges that

18

> Either directly or through its wholly-owned and controlled subsidiaries, Aetna, Inc. issues and administers health insurance plans and is delegated responsibility to make benefit determinations pursuant to those plans.  As such, Aetna, Inc. is a fiduciary under ERISA regarding the claims at issue in this litigation.

(Compl. ¶ 47).  The Complaint further provides that

> Aetna Life Insurance Company, *acting directly and on behalf of and under the supervision and direction of Aetna, Inc.*, is also a fiduciary under ERISA regarding the claims at issue in this litigation.

(*Id*. ¶ 48 (emphasis added)).  Taken together, these allegations sufficiently plead that Aetna, Inc. controlled the administration of benefits under Plaintiffs' Plans.

Defendants' argument to the contrary is unavailing.  (*See* Mov. Br. at 23).  The Complaint does not allege only that Aetna, Inc. and Aetna Life Insurance Company are affiliates, or that Aetna, Inc. "played a role" in forming the policy by which the Involuntary Services provision is applied.  Rather, the Complaint specifically alleges that *Aetna, Inc.* "is delegated responsibility to make benefit determinations pursuant to those plans," is a fiduciary to the Plans, and may directly issue and administer health insurance plans.  (Compl. ¶ 47).  This makes the present case distinguishable from *Lutz Surgical* and *Tamburrino*, cited by Defendants.  *See Lutz Surgical*, 2021 WL 2549343, at *4 ("Here, it is undisputed that Aetna, Inc. is not a plan; nor does it insure members, administer health insurance plans, or serve as a plan fiduciary."); *Tamburrino*, 2022 WL 1213467, at *6 ("[T]he plaintiffs did 'not allege that the . . . defendants are plan administrators, trustees of the plan, or claims administrators that exercise total control over the benefits denial process.").  The Court finds these allegations sufficient to plausibly allege that Aetna, Inc. is a proper defendant at this time.

Defendants additionally argue that "[c]ourts within this district have repeatedly recognized that Aetna, Inc. has no role in Aetna's administration of healthcare plans, and, in turn, no fiduciary responsibility under ERISA to make it a proper party to ERISA fiduciary breach actions."  (Mov.

Br. at 23 (citing *Premier Orthopaedic Assoc. of S. NJ, LLC v. Aetna, Inc.*, No. 20-11641, 2021 WL 2651253, at *1 n.1 (D.N.J. June 28, 2021)).  But the Court agrees with Plaintiffs that the findings of other courts on Aetna, Inc.'s role in different ERISA plans is not relevant to Aetna, Inc.'s role in the at-issue Plans.  (Opp. Br. at 40).  Though Defendants argue that Aetna, Inc. "plays no role in the administration of [Aetna Life Insurance Company's] health care plans" (Reply at 12), Defendants do not point to any provisions in the Plans themselves that contradict Plaintiffs' allegations to the contrary.[9]  At most, Defendants have created a dispute of fact as to Aetna, Inc.'s role in the Plans, which cannot be decided on a motion to dismiss.  *See Atlantic Orthopaedic Assoc., LLC*, 2016 WL 889562, at *7 ("Without factual development, the appropriateness, or not, of suing ExpressJet (or for that matter Blue Cross) on this claim cannot be determined.").  Accordingly, accepting the allegations of the Complaint as true, Plaintiffs have sufficiently alleged that Aetna, Inc. is a proper defendant at this stage in the litigation.

## 2. Group Pleading

Defendants additionally move to dismiss the Complaint on the basis that Plaintiffs have failed to distinguish between Aetna, Inc., and Aetna Life Insurance Company, and, accordingly, Plaintiffs' claims constitute improper group pleading in violation of Rule 8.  (Mov. Br. at 21–22).  Plaintiffs oppose, arguing that "in cases involving a multitude of corporate affiliates whose processes are heavily intermingled and dependent upon one another," courts apply a relaxed pleading standard, which Plaintiffs have met.  (Opp. Br. at 38–39).  The Court agrees with Plaintiffs.

---

[9]    In fact, the Plans themselves appear to name Plaintiffs' employers as the plan administrators and Aetna Life Insurance Company as the third-party administrator.  (*See e.g.*, D.E. No. 14-3 at 7 & 110).  Further, the Plans define "Aetna" as "Aetna Life Insurance Company, *an affiliate*, or a third party vendor under contract with Aetna."  (*See e.g.*, *id.* at 93 (emphasis added)).  Thus, the Plans do not clearly define the role, if any, Aetna, Inc. plays in benefits determinations, and the Court accepts as true the allegations of the Complaint that Aetna, Inc. was "delegated responsibility to make benefit determinations pursuant to those plans."  (Compl. ¶ 47).

A complaint must meet the pleading requirements of Rule 8.  However, as stated above, when information is in the exclusive control of the defendants, courts in this district have applied a relaxed pleading standard under Rule 8.  *See In re Volkswagen*, 2017 WL 1902160, at \*9.  For example, allegations that each defendant's role will be discerned through discovery, or that the defendants were working in concert, may be sufficient to meet this standard.  *See id.*;  *Genesis Lab'y Mgmt. LLC v. United Health Group LLC*, No. 21-12057, 2023 WL 2387400, at \*5 (D.N.J. March 6, 2023) (finding that the complaint did not adequately put the defendants on notice of the claims against them because it "lumps the [d]efendants together without asserting that they are acting in concert" and "caution[ing] [p]laintiff that it should not engage in 'group pleading' to the extent that it can be avoided at this stage").  For the following reasons, the Court finds that the Complaint adequately puts each Defendant on notice of the claims against it.

*First*, the Complaint does make particularized allegations about the actions of Aetna Life Insurance Company, defined as "Aetna" in the Complaint.  (Compl. at 1).  In fact, most of the particularized allegations of the Complaint are directed at "Aetna."  (*See e.g., id.* ¶ 1, 82–84, 102– 104, & 132–134).  Accordingly, it is clear that Aetna Life Insurance Company is on proper notice of the claims against it in this litigation.  *Second*, as to Aetna, Inc., the Complaint provides particularized allegations about it and its relationship to Aetna Life Insurance Company.  Specifically, the Complaint alleges that Aetna Life Insurance Company is a wholly owned subsidiary of Aetna, Inc.  (*Id.* ¶ 48).  According to the Complaint, both Aetna, Inc. and Aetna Life Insurance Company have the authority to make benefit determinations under the Plans.  (*Id.* ¶¶ 47–48).  As to Aetna, Inc., the Complaint alleges that it has delegated responsibility to make benefit determinations, and that it administers health plans either directly or indirectly through its wholly owned and controlled subsidiaries.  (*Id.*).  Taken together, Plaintiffs are alleging that Aetna, Inc.

and Aetna Life Insurance Company operate in tandem to administer benefits under the Plans, and that both may be liable for Plaintiffs' benefits determinations.

It is true that the Complaint primarily makes particularized allegations against "Aetna"— referring to Aetna Life Insurance Company—rather than about Aetna, Inc.  However, in light of Plaintiffs' allegations that Aetna, Inc. "is delegated responsibility to make benefit determinations pursuant to th[e] plans" (*id.* ¶ 47), and that Aetna Life Insurance Company was "acting directly on behalf of and under the supervision and direction of Aetna, Inc." (*id.* ¶ 48), it is reasonable to infer from the Complaint's allegations that Aetna, Inc. either had direct control over the benefits determinations or controlled the benefits determinations made by Aetna Life Insurance Company.[10]  On a motion to dismiss, a court draws all reasonable inferences in favor of the plaintiff.  *City of Cambridge Ret. Sys.*, 908 F.3d at 878.  By specifically alleging how Defendants operated in concert, the Complaint meets the pleading requirements of Rule 8.  *See Genesis Laboratory* 2023 WL 2387400, at *5.  Accordingly, the Court finds that these allegations are sufficient to put Aetna, Inc. on notice as to the claims against it and that "[d]iscovery will bear out what functions, if any, each Defendant performed in furtherance of . . . adjudicating the individual claims of the named Plaintiffs."  (Opp. Br. at 4).  Defendants' motion to dismiss on the basis of group pleading is, therefore, DENIED.

---

[10]   These specific allegations regarding Aetna, Inc.'s role in making benefits determinations also align this case with *In re Volkswagen*, 2017 WL 1902160, at *9.  Despite Defendants' argument that *In re Volkswagen* is distinguishable because "the Complaint here does not contain a single allegation suggesting that Aetna, Inc. and [Aetna Life Insurance Company] have 'heavily intermingled' processes" (Reply at 11), this is precisely what the Complaint alleges through these particularized allegations.  Further, these allegations make this case distinguishable from *Premier Orthopedic Assocs. of S. N.J., LLC*, 2021 WL 2651253, at *1, relied upon by Defendants.  (Reply at 11–12).  In *Premier Orthopedic*, the case caption identifies Aetna, Inc. as the Defendant, but the court included a footnote indicating that "Aetna Life Insurance Company is the proper party to this matter."  *Premier Orthopedic*, 2021 WL 2651253, at *1 n.1.  However, the court provided no analysis of the issue, or any additional commentary on the defendants apart from this clarification.  The court thus did not address any allegation that the defendants were acting in concert, or that Aetna, Inc. was delegated responsibility to make benefit determinations.

## IV.     CONCLUSION

In sum, Plaintiffs have adequately alleged claims for benefits pursuant to § 502(a)(1) in Count I and, in the alternative, claims for equitable relief pursuant to § 502(a)(3)(A) in Count II against both Defendants Aetna, Inc. and Aetna Life Insurance Company.  Defendants' motion is DENIED as to these claims.  However, Plaintiffs cannot bring claims for fiduciary breach pursuant to § 502(a)(1) in Count I and have failed to adequately plead claims for fiduciary breach pursuant to § 502(a)(3)(B) arising out of Defendants' alleged unjust enrichment from collecting NAP Access Fees in Count III.  Accordingly, Defendants' motion is GRANTED as to these claims.  Plaintiffs' claims for fiduciary breach in Count I are DISMISSED *with prejudice*.  Count III is DISMISSED in its entirety *without prejudice*.  Plaintiffs may file an amended complaint within 30 days of this decision.  An appropriate Order accompanies this Opinion.


**Dated:** July 5, 2023


Esther Salas, U.S.D.J.

23