May 23, 2025

<u>VIA ECF</u>

Hon. André M. Espinosa, U.S.M.J.
United States District Court
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re: <u>*Shapiro et al. v. Aetna Inc. and Aetna Life Insurance Company*, No. 2:22-cv-1958-ES-AME</u>

Dear Judge Espinosa,

Plaintiffs Beth Shapiro, Lori Ann Lombardi, and Heather Gitlin, individually and on behalf of others similarly situated ("Plaintiffs") and Defendants Aetna Inc. and Aetna Life Insurance Company ("Defendants") (collectively, the "Parties") respectfully submit this joint discovery dispute letter in accordance the Court's May 12, 2025 text order (ECF 72) and Your Honor's Civil Case Management Order regarding discovery dispute procedures.

## I. Background

### A. The Parties' Meet and Confer Communications

The Parties incorporate herein by reference their statements regarding their meet and confer communications as described in their Joint Letter, ECF 71, attached hereto as Exhibit A.

### B. Relevant Requests for Production

The relevant RFPs are Nos. 10-24. For a subset, RFP 16-20 and 22-24, Plaintiffs have offered to limit to such documents and communications found for plans within the claims sample. A copy of the RFPs is attached as Exhibit B. A copy of Defendants' responses and objections thereto is attached as Exhibit C.

## II. Plaintiffs' Position

Defendants' insistence that Plaintiffs are not entitled to discover internal communications or any documents outside the administrative record in an ERISA action fundamentally misapprehends both the "ERISA record rule" and the scope of this action.

1. **Plaintiffs' RFPs,[1] As Narrowed**

    Plaintiffs' RFPs at issue seek documents falling into three general categories: (1) RFPs 10-13, 21: Aetna's internal policies, procedures and training manuals regarding Aetna's "Involuntary Services" policies; (2) RFPs 14-15: Aetna's internal communications regarding Aetna's policies, procedures, and changes to its reimbursement of claims for "Involuntary Services"; and (3) RFPs 16-20 and 22-24: documents and communications limited to the ERISA plans within the sample of 350 claims produced by Aetna.

2. **Plaintiffs' Requests Are Relevant**

Defendants' argument that "ERISA health benefits determination is generally confined to the administrative record" fails for several reasons. First, as threshold matter, even in those situations, courts recognize expansions of this limitation. Second, Defendants' argument is based entirely on case law applicable to individual claimants challenging adverse benefits determinations, not class actions. Third, it fails to address the fact that discovery concerning breach of fiduciary duty claims are not subject to this discovery limitation.

Courts in this Circuit routinely permit discovery outside the administrative record in ERISA actions. *See*, *e.g.*, *Noga v. Fulton Financial Corp. Employee Benefit Plan*, 19 F. 4th 264, 273 (3d Cir. 2021) ("[The ERISA record rule] is not absolute, however."). For example, courts will permit discovery regarding "potential biases and conflicts of interest" on the part of the fiduciary, as that information is typically not contained within the administrative record itself. *Id*. As the Third Circuit explained in *Noga*, "[d]espite its potential relevance, information regarding a structural conflict may be omitted from the administrative record due to the combination of information asymmetry and financial incentives: the participant may not know of the conflict, and the fiduciary has no financial incentive to disclose it." *Id*.

Crucial to the analysis here—and ignored by Defendants entirely—is the fundamental nature of this litigation as a class action. Pertinent to the rationale in *Noga*, class discovery sought by Plaintiffs regarding Defendants' treatment of involuntary services claims for putative class members throughout the class period is "not contained within the administrative record itself" and is indisputably relevant to Plaintiffs' claims. *Noga*, 19 F. 4th at 273. Importantly, the

---

[1] As indicated by the definition of the Class, Plaintiffs seek information solely related to Aetna's treatment of "Involuntary Services" involving Aetna's National Advantage Plan fees in self-funded ERISA plans. See First Amended Complaint, ECF 30, ¶136.

rule limiting discovery to the administrative record in discretionary adverse benefit determinations for individual claims is a creature of federal common law explicitly tied to and derived from the limited judicial standard of review for such determinations. *Id*. This judicial standard of review for *individual* challenges to specific ERISA decisions has no bearing on the entirely different requirements the named Plaintiffs must demonstrate to certify a class under Rule 23. Because Plaintiffs are asserting claims on a classwide basis, Plaintiffs are entitled to discovery regarding the requirements under Rule 23. *See*, *e.g.*, *Ehrhart v. Sythes (USA)*, No. 07-01237 (SDW), 2007 WL 4591276, at *4 (D.N.J. Dec. 28, 2007) ("[P]utative class plaintiffs are entitled to develop their claims (class or otherwise) through discovery."). None of Defendants' cited authority addresses issues of class actions engaged in Rule 23 discovery. Indeed, the court's decision in *Burnett v. Excellus Health Plan, Inc.*, 2009 WL 10699704, at *1 (D. Wyo. June 26, 2009) explicitly did "not involve or in any way affect plaintiffs' class action claims[.]"

Significantly, a plaintiff carries the burden to "affirmatively demonstrate his compliance" with Rule 23(a). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (emphasis added). The Court must find by a preponderance of the evidence—not by mere assumption of the facts—that these requirements are met in order to rule in favor of class certification. *In re Hydrogen Peroxide*, 552 F.3d at 320. In their position statement below, Defendants admit that how Aetna interpreted and applied the involuntary services plan language applicable to the claims at issue is a relevant question in this case. Contrary to their assertion that "all of this information" is contained within its sample of claims, the claim samples only show Aetna's application of its policies to individual claims. It necessarily does not contain Aetna's internal interpretation of how such policies were determined to be applied across the putative class, which information would be contained in its internal communications, procedures, and policies. Unless Defendants are willing to stipulate that each element of Rule 23 is established by agreement between the parties, discovery outside of the administrative record is necessary for Plaintiffs to establish these elements.

These documents are pertinent to show the development of Aetna's "involuntary services" policy and to establish that it was applied consistently, another important aspect for class certification and for defining the members of the class. Aetna's implication that Plaintiffs delayed in raising this issue is disingenuous, as the very claims sample that Aetna asserts is the full scope of appropriate discovery was delayed by Aetna's failure to inform Plaintiffs until

3

January 2025 that the claims sample collection procedure proposed in October 2024 was not feasible. Defendants do not seem to contest that the discovery sought is relevant. In their March 17, 2025 letter, Defendants wrote that "Plaintiffs will … have the opportunity to question Aetna's 30(b)(6) witness about the operation of Aetna's policies over time." To the extent Defendants will not object to questions regarding Defendants' treatment of involuntary services claims on a classwide basis over the class period on relevance grounds, Defendants implicitly concede that such discovery is relevant and obtainable in an ERISA class action.

Finally, Defendants completely ignore that "[c]ourts in the Third Circuit . . . have concluded that 'discovery concerning a breach of fiduciary duty claim does not fall prey to the same restrictions that govern denial of benefits allegations.'" *Moran v. Life Ins. Co. of N. Am. Misericordia Univ.*, 2014 WL 4251604, at *9 (M.D. Pa. Aug. 27, 2014) (explaining that discovery for breach of fiduciary duty claims is not limited to the administrative record). Furthermore, the *Burnett* court cited by Defendants based its decision to decline "expansion of discovery beyond the administrative record for the purposes of the (a)(3) claim" on its finding that "the equitable relief sought pursuant to (a)(3) [was] not available to [plaintiffs]." *Id*. at *3. Here, Plaintiffs' claims for equitable relief for breaches of fiduciary duty under § 502(a)(3)(A) in Count II were permitted to proceed. Opinion on MTD, ECF 27 at 14.

In any event, Defendants do not point to a single class ERISA case in which a court has declined to permit discovery of electronic communications or internal policies, procedures and training manuals pertaining to the claims at issue but are outside the administrative record. Instead, every case Defendants rely on involves an *individual* adverse determination of benefits. Plaintiffs do not dispute that those cases are generally limited to the administrative record, but Defendants do not explain why class discovery would be contained in the administrative record.

### 3. Defendants Have Not Established an Undue Burden

Second, Defendants do not articulate any undue burden beyond a generic assertion that producing electronic communications might require them to "review … potentially hundreds of thousands of emails" and that many of the emails will be privileged. To be clear, Defendants have never actually *performed* any search and, instead, Defendants' assertions regarding the quantity of responsive emails are purely hypothetical. Defendants have also not articulated any burden regarding the requested internal policies, procedures and training manuals.

4

As the Third Circuit has made clear, "the mere statement by a party that the [request] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory." *Josephs v. Harris Corp.*, 677 F. 2d 985, 992 (3d Cir. 1982). Instead, "the party resisting discovery "must show specifically how ... each [request] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (internal citations omitted). Defendants have not done so. They have not provided any information to Plaintiffs to support the claim of undue burden, "such as the number of records responsive to the requests [and] the time and cost involved in compiling the information." *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 504 (D.N.J. 2021).

Instead, Defendants have made a broad, generalized assertion that responding to Plaintiffs' requests *might* require searching a large quantity of electronic communications and conflated the categories of requests. First, Defendants have offered no explanation whatsoever regarding the burden in searching for and producing the requested internal policies, procedures and training manuals. Second, regarding Aetna's internal communications, Defendants have failed to provide information regarding identifying potential custodians or initial search terms for the parties to then consider narrowing, as is typically done in complex litigation, instead referencing "*potentially* hundreds of document custodians and to collect *potentially* hundreds of thousands of emails" (emphasis added). These statements of hypothetical volumes of information are insufficient to support Defendants' objection of undue burden, particularly when hit counts for proposed search terms can often be provided within hours.

Finally, Plaintiffs have repeatedly offered to work with Defendants to reduce any undue burden, including by negotiating search terms. Defendants have instead insisted that they have no obligation to produce any electronic communications whatsoever, leaving Plaintiffs with no option other than to seek assistance from the Court.

### 4. Plaintiffs Are Entitled to Discovery While the Discovery Period is Open

Defendants finally contend that Plaintiffs are not entitled to discovery because Plaintiffs allegedly "delayed" in conferring with Defendants regarding the requested discovery. This argument is absurd on its face given that the discovery period is still open and Plaintiffs are permitted to pursue discovery during that time. Defendants themselves issued wide-ranging discovery on April 15, 2025.

### III. Defendants' Position

#### 1. The ESI Discovery Plaintiffs Seek Is Outside the Scope of Permissible Discovery

The ESI discovery Plaintiffs seek is not a permissible source of discovery in this ERISA case. As Plaintiffs acknowledge, it is settled law in the District of New Jersey that judicial review of an ERISA benefits determination is generally confined to the administrative record. *See, e.g.*, *Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 271 (3d Cir. 2021) ("Under the ERISA record rule, judicial review of an ERISA fiduciary's discretionary adverse benefit decision is confined to the information contained in the administrative record."); *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 (3d Cir. 2010) ("[C]ourts generally must base their review of an administrator's decision on the materials that were before the administrator when it made the challenged decision"); *Dowman v. Chubb Corp.*, 2018 WL 2973381, at *4 (D.N.J. June 11, 2018) (noting judicial review limited to the administrative record "is consistent with ERISA's goal of providing plan participants and beneficiaries an expeditious and inexpensive method of resolving . . . disputes") (internal citation omitted).

Court have recognized a narrow exception to this rule—instances where a plaintiff has alleged a structural conflict of interest where the fiduciary both determined eligibility for benefits and also funded those benefits. *See, e.g.*, *Noga*, 19 F.4th at 274 ("The exception to the ERISA record rule for structural conflicts is narrow and does not allow supplementation of the record with information related to the claim or the review process."); *Howley*, 625 F.3d 788, 794 (3d Cir. 2010) (same); *Post v. Hartford Ins. Co.*, 501 F.3d 154, 168–69 (3d Cir. 2007) (same). That exception does not apply here. All of the health plans at issue are self-funded, meaning that the plan sponsor, not Aetna, is responsible for the payment of claims. *See* Amended Complaint, ECF 30 at ¶ 136. Because Aetna is merely the adjudicator of the at-issue claims, no structural conflict exists. There is therefore no basis to invoke ERISA's narrow exception to the administrative record rule.

Plaintiffs do not allege that the structural conflict exception should apply; instead they argue that under *Noga* the Court should allow the extra-record "class discovery" they seek because it is also a form any discovery that is "not contained within the administrative record itself." *See* Plaintiffs' Position Statement, *supra* at 4. This is a misreading of both *Noga* and the numerous other cases in this Circuit limiting the review of a claims administrator's review of claims for benefits to the administrative record. *See, e.g.*, *Hawks v. PNC Fin. Servs. Grp. Inc.*,

6

2024 WL 3664599, at *5 (3d Cir. Aug. 6, 2024) (quoting *Noga*, 19 F. 4th at 271); *Brainbuilders, LLC v. Ocean Healthcare Mgmt. Grp. Benefit Plan*, 2021 WL 949321, at *6 (D.N.J. Mar. 12, 2021); *see also, e.g.*, *Burnett v. Excellus Health Plan, Inc.*, 2009 WL 10699704, at *2–3 (D. Wyo. June 26, 2009) (remarking discovery outside administrative record is allowed only where plaintiffs advance solely § 502(a)(3) claims). Put differently, *Noga* and its predecessor cases do not provide a menu of possible exceptions to the administrative record rule in ERISA cases; they permit only one, and it indisputably does not apply here.

      **2.   The ESI Discovery Plaintiffs Seek Is Not Relevant To The Claims At Issue**

      Even if Plaintiffs were entitled to extra-record discovery, the ESI discovery they seek is not relevant to any of the claims they have brought on behalf of either the individual named Plaintiffs or the putative class. Plaintiffs stated above and throughout the meet and confer process that the ESI discovery they seek is relevant to unspecified "class issues," and that they are entitled to this information because they need it to satisfy the requirements of Rule 23. Nothing in the case law supports Plaintiffs' argument here that styling their complaint as a putative class action somehow exempts it from ERISA's discovery restrictions. Furthermore, Plaintiffs themselves have never articulated how their discovery requests would establish any element of Rule 23. Mere invocation of the rule is not enough to establish relevance. *Ramos v. Walmart, Inc.*, 2023 WL 2327208, at *2 (D.N.J. Mar. 2, 2023) (Espinosa, J.) ("[W]hen objections to discovery are raised, the party seeking discovery must demonstrate, as an initial matter, that the information sought falls within the permissible scope of discovery under Federal Rule of Civil Procedure 26(b).").

      Examination of any one of Plaintiffs' ESI requests makes this clear. For example, Request Number 14 seeks "Any and all internal communication" concerning Aetna's reimbursement policies for involuntary services for "any and all ERISA health plans" Aetna administered over a nine-year period. This request has no connection to any of the components of Rule 23. Aetna's internal communications will not assist in establishing the numerosity of Plaintiffs' purported class, nor whether the named Plaintiffs will be adequate class representatives. Fed. R. Civ. P. 23(a)(1); (4). This request will not establish whether there are "questions of law or fact common to the class;" and to the extent that common issues do exist, any evidentiary support for those will be found in the plan documents and the communications between Aetna and the plan members or beneficiaries regarding the adjudication of their claims.

*Id* at (a)(2). Defendants have already produced these materials for the named Plaintiffs and for over 350 additional claims. Defendants have also produced more than 200 Aetna policies and procedures that relate to the involuntary services provision at issue. So Plaintiffs have more than enough information to address these questions.[2]

The same is true for typicality; nothing about Aetna's internal communications regarding its reimbursement policies establishes whether the named Plaintiffs' claims and legal theories are typical of those of the putative class. Those answers will again come from the extensive administrative record that Aetna has already produced. Internal communications are, simply put, irrelevant to each and every element of Rule 23(a). The same holds true for all of Plaintiffs' other ESI discovery requests at issue here.

Plaintiffs' requests fare no better when analyzed in the context of Rule 23(b). Rule 23(b)(1) allows certification where individual adjudication would create the risk of inconsistent or contradictory obligations. Fed. R. Civ. P. 23(b)(1). Aetna's internal communications are irrelevant to this inquiry, and there is no risk of inconsistent obligations because each member's claims rise and fall on the merits of the underlying claim for benefits and the applicable plan language. Similarly, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Aetna's communications about its policies do nothing to establish the propriety of a single injunction because, once more, class members' entitlement to ultimate relief rises and falls on the specifics of their plan language. Nor do Aetna's communications bear on any effort to establish certification is proper under Rule 23(b)(3), which requires common questions

---

[2] Plaintiffs may argue that if given access to enough of Aetna's internal communications, they might stumble upon some common issue. But this possibility does not satisfy the requirements of Rule 26, which mandates that the Court find that the information sought by the moving party is likely to produce material relevant to the class certification inquiry. *See In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 86 (3d Cir. 2016) (holding a district court "reasonably concluded that much of the information . . . sought was not likely to lead to the discovery of admissible evidence as required by Rule 26"); *see also Ferucci v. Kohl's Dep't Store*, 2009 WL 10690327, at *1 (D.N.J. July 2, 2009) ("Although the scope of discovery is broad, it is not unlimited. Discovery is not permitted where the discovery sought is irrelevant to the claims at issue, where the requests were tendered in bad faith, or where the requests are unduly burdensome.") (internal citation omitted).

predominate over individual ones. *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008). Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Once more, Aetna's communications have no bearing on this issue—the cohesiveness of the class depends on the specifics of class members' claims and the applicable plan language. Therefore, in addition to being barred as appropriate sources of discovery under ERISA, Plaintiffs' ESI discovery requests are also not relevant to establishing any element of Rule 23.

Finally, Plaintiffs are wrong in claiming that Defendants have somehow conceded the relevance of the ESI discovery requests by stating in a meet and confer letter that Plaintiffs will have the opportunity to question Aetna's 30(b)(6) witness about the operation of Aetna's policies over time. How Aetna interpreted and applied the involuntary services plan language applicable to the claims at issue is a relevant question in this case, one that will be answered by the applicable plan language, Aetna's interpretation of it as reflected in Aetna's adjudication of the at-issue claims, and Aetna's communications with the relevant members regarding this adjudication. All of this information is contained within the documents Aetna has already produced. To the extent that Plaintiffs seek further information on this topic, they are free to do so via 30(b)(6) witness testimony. Nothing about that offer constitutes a concession that Plaintiffs' ESI discovery requests are relevant or appropriate sources of discovery.

    **3. The ESI Discovery Plaintiffs Seek Is Unduly Burdensome And Not Proportional to the Needs of the Case**

Even if Plaintiffs' ESI discovery requests were permissible under ERISA or relevant, they are not "proportional to the needs of the case" because of the significant burden they would impose. Fed. R. Civ. P. 26(b)(1). "[T]he party seeking discovery bears the burden to establish its . . . proportionality." *Ramos*, 2023 WL 2327208, at *2. Courts in this Circuit routinely assess "whether the burden or expense of the proposed discovery outweighs its likely benefit." *See, e.g.*, *Wood v. Borough of Woodlynne*, 2024 WL 2974239, at *3 (D.N.J. June 13, 2024) (quoting Fed. R. Civ. P. 26(b)(1)). Here the burden and expense of collecting, reviewing, and producing potentially hundreds of thousands of documents is not proportional to the needs of the case.

As described above, Plaintiffs have already received thousands of documents in this case, including the full administrative record of Plaintiffs' claims, more than 200 internal Aetna

9

policies, including any changes to those policies over time, and the complete administrative records from a randomly selected sample of 350 claims nationwide. Plaintiffs' refusal to explain how these productions are insufficient to meet their discovery needs is baffling. For example, Plaintiffs state they need to understand whether Aetna's involuntary services provision was applied consistently. But the produced record contains everything Plaintiffs need to make that assessment: all versions of the relevant policies and a sample of 350 claims and their accompanying plan documents, communications between Aetna and plan members, and other administrative records showing how Aetna applied these policies over time. These are the primary source documents that will show how that provision was actually interpreted; no additional documents are necessary to perform this analysis.

      Nevertheless, Plaintiffs seek to impose an enormous burden and cost on Aetna even though they already have all the evidence they need. Based on the breadth of Plaintiffs' requests, Aetna estimates it will need to identify hundreds of potential document custodians and to collect potentially hundreds of thousands of emails. Plaintiffs allege that Defendants' burden assertion is "baseless" because Defendants have not agreed to negotiate search terms or to discuss potential custodians regarding the ESI discovery requests. But the burden is apparent from the face of the broad requests.

      For example, Request Number 17 seeks "Any and all communications between Aetna and the Plan Sponsors of any and all employer-sponsored health plans concerning or relating to how Aetna reimburses claims for 'Involuntary Services' as defined in any and all ERISA health plans that Aetna administers or has administered at any time from April 5, 2016, through the present." Plaintiff have offered to "narrow" this request by limiting it to the 350 plan sponsors at issue in the sample claims. This single request will require the custodial collection of communications from hundreds of different individuals at Aetna who are responsible for communicating with these specific plan sponsors during the nine-year period at issue, and then the application of whatever search terms the parties agree upon, which will yield tens if not hundreds of thousands of results that will have to be reviewed, assessed for responsiveness and privilege, and then produced. This will be a time-consuming, expensive, and labor-intensive process that will require a further months-long extension of the discovery schedule, an outcome the Court has cautioned the parties will have negative consequences given the age of the case.

Finally, Plaintiffs criticize Defendants for arguing that it is too late in the day for Plaintiffs to pursue these requests, particularly after they allowed a year of discovery go by without ever raising this issue. They argue that they are entitled to pursue discovery "while the discovery period is open."[3] *See* Plaintiffs' Position Statement, *supra* at 6. But what they are asking for here amounts to more than pursuit of a few additional documents or an extra deposition. Plaintiffs are essentially asking the Court to permit them, on the eve of the close of fact discovery, to open up an entirely new phase of discovery in this case. This requested discovery is beyond the scope of what they are entitled to or need, and Plaintiffs' position ignores the basic principle that "the scope of discovery is not unlimited." *Kim v. Eco Pro* LLC, 2024 WL 1006262, at *3 (D.N.J. Mar. 8, 2024) (Espinosa, J.). In doing so, Plaintiffs run afoul of the principles that govern discovery in ERISA actions and more generally. They have made no demonstration this material is permissible, relevant, or proportional to the needs of this case. The Court should therefore deny Plaintiffs' request to compel production.

Respectfully submitted,

| | |
|---|---|
| *s/ Amey J. Park* | *s/ Meredith Garagiola* |
| Natalie Lesser | Meaghan VerGow (pro hac vice) |
| Amey J. Park | Jeffrey Gordon (pro hac vice) |
| BERGER MONTAGUE PC | Meredith Garagiola (pro hac vice) |
| 1818 Market Street, Suite 3600 | O'MELVENY & MYERS LLP |
| Philadelphia, PA 19103 | 1625 Eye Street, N.W. |
| nlesser@bm.net | Washington, D.C. 20006 |
| apark@bm.net | mvergow@omm.com |
| T:(267) 831-4701 | jgordon@omm.com |
| F: (215) 875-4604 | mgaragiola@omm.com |
| | T: (202) 383-5300 |
| Julie S. Selesnick (pro hac vice) | F: (202) 383-5414 |
| BERGER MONTAGUE PC | |
| 1001 G Street NW, Suite 400 East | Mariellen Dugan |

---

[3] Plaintiffs also defend their decision to wait until the end of the discovery period to raise this issue by alleging that Defendants recently issued "wide-ranging" discovery requests. They appear to be referring to third-party subpoenas requesting materials relating to the named Plaintiffs' treatments and course of care. Any comparison of these requests to Plaintiffs' ESI discovery is misplaced. These third-party requests are significantly more limited in scope, do not impose any burden on Plaintiffs, and as of yet none of the recipients have raised objections or concerns to Defendants about their contents. The two sets of requests are not alike.

11

Washington, DC 20001
Telephone: (202) 669-1770
Fax (215) 875-5702
jselesnick@bm.net
Telephone: (202) 221-5279
Fax (215) 875-5702

Michael Fried
Leslie S. Howard
COHEN HOWARD, LLP
766 Shrewsbury Avenue, Suite 200
Tinton Falls, NJ 07724
mfried@cohenhoward.com
lhoward@cohenhoward.com
T: (732) 747-5202
F: (732) 747-5259

John W. Leardi
Christopher B. Bladel
Nicole P. Allocca
BUTTACI LEARDI & WERNER LLC
212 Carnegie Center, Suite 202
Princeton, NJ 08540
jwleardi@buttacilaw.com
cbbladel@buttacilaw.com
npallocca@buttacilaw.com
T: (609) 799-5150
F: (609) 799-5180

*Attorneys for Plaintiffs and the Proposed Class*

CALCAGNI & KANEFSKY, LLP
1085 Raymond Blvs., 14th Floor
Newark, NJ 07102
mdugan@ck-litigation.com
T: (862) 397-1796
F: (862) 902-5458

*Counsel for Aetna Inc. and Aetna Life Insurance Company*